2/20/02

THIS DISPOSITION
IS CITABLE AS PRECEDENT
OF THE T.T.A.B.

UNITED STATES DEPARTMENT OF COMMERCE
**Patent and Trademark Office**
**Trademark Trial and Appeal Board**
2900 Crystal Drive
Arlington, Virginia 22202-3513

cab

Opposition No. 122,064

Leatherwood Scopes
International, Inc.

v.

James M. Leatherwood

Before Chapman, Bottorff and Holtzman, Administrative Trademark Judges.

By the Board:

Applicant has filed an application to register the mark LEATHERWOOD for "telescopes and optical scopes for rifles" in Class 9.[1]  In the original notice of opposition, opposer alleged that in 1995 it "…purchased from Applicant, who was doing business as Tri-Continental Trading Corporation, the assets, technology and good will related to the Art Tel and Art II scopes for rifles, which are commonly known as the LEATHERWOOD ART TEL and ART II scopes," and thus has "… obtained the right to market scopes for rifles under the

---

[1] Application Serial No. 76/042,346, filed on May 5, 2000, claiming use in commerce since 1969.

designation LEATHERWOOD."[2]  Opposer, at that time, also alleged that the parties were involved in litigation in the United States District Court for the District of Minnesota; that the respective goods of the parties are closely related and would be promoted through the same channels of trade to the same class of customers and purchasers; and that applicant's mark LEATHERWOOD so resembles opposer's previously used mark as to be likely to cause confusion, mistake or deception within the meaning of Section 2(d) of the Trademark Act.[3]  In addition, opposer alleged that applicant's use of the mark would dilute the distinctive quality of opposer's LEATHERWOOD SCOPES INTERNATIONAL mark within the meaning of Section 43(c) of the Trademark Act.[4]

In his answer, applicant denies the salient allegations of the notice of opposition and states explicitly that he has not abandoned or assigned the mark LEATHERWOOD, that he has priority, and that he has "…total ownership and full rights to register the trademark LEATHERWOOD."

This case now comes up on the following motions:

1) applicant's contested motion for summary judgment in his favor, filed August 30, 2001, based on the decision of the judge in the civil litigation

---

[2] See paragraph nos. 2 and 3 of the notice of opposition filed January 25, 2001.
[3] See paragraph nos. 5, 7, 8, and 9 of the notice of opposition.
[4] See paragraph no. 10 of the notice of opposition.

between the parties that no sale of the LEATHERWOOD trademark had taken place;[5]

2) opposer's contested motion, filed October 2, 2001, for leave to amend the notice of opposition to add the following new allegations: that applicant acquiesced to opposer's use of the LEATHERWOOD mark thus precluding applicant from acquiring exclusive rights therein; that opposer relied on this acquiescence, which constitutes laches that preclude applicant from acquiring exclusive rights in the mark; and that uncontrolled use of the mark by opposer amounted to a naked license, causing applicant to have abandoned its rights in the mark.[6] (Opposer's proposed amended notice of opposition retains opposer's Section 2(d) claim,[7] but not the dilution claim.); and

3) opposer's October 2, 2001 cross motion for summary judgment in its favor based on the new allegations of its proposed amendment to the notice of opposition.

Before turning to the pending motions, we find it instructive to review the April 20, 2001 decision of the District Court.[8] As background set out by the court, Leatherwood Scopes International was formed in 1995 and entered into an agreement, on July 17, 1995, with Tri Continental (of which James M. Leatherwood was an officer, director and shareholder) to purchase the assets, technology

---

[5] A copy of the District Court's decision is one of the exhibits accompanying applicant's motion.

[6] See paragraph nos. 19-21 of the proposed amended notice of opposition.

[7] See paragraph nos. 11-14 of the proposed amended notice of opposition.

[8] *Leatherwood Scopes International, Inc. v. James M. Leatherwood,* Civ. File No. 00-817 (PAM/JGL) in the United States District Court for the District of Minnesota.

and goodwill related to the ART II and ART Tel scope; the assets, technology and goodwill related to Tri-Continental's MPC scope were not included in the agreement.  In particular, the agreement included an Asset Purchase Agreement and a Noncompetition Agreement with respect to the "…ART II and ART Tel Scopes, commonly known as Leatherwood ART II and ART Tel Scopes…."  After the sale, the parties continued to work together, with Mr. Leatherwood helping to train the employees of Leatherwood Scopes International in the manufacture of the ART scopes.  At the same time, Mr. Leatherwood (defendant herein and in the court case) continued his own use of the LEATHERWOOD mark in connection with the manufacture and sale of his leverlock scope mounts.[9]  However, the relationship between the parties deteriorated in 1998 when Mr. Leatherwood began selling the "Leatherwood Sporter" scope through his newly formed company, Leatherwood Optics.  Leatherwood Scopes International (plaintiff herein) then filed the civil action claiming that defendant's use of the name LEATHERWOOD in conjunction with the Sporter scope violated the Asset Purchase Agreement, and that the sale of the Sporter scope itself violated the Noncompetition Agreement.[10]  Defendant answered by contending that the Leatherwood Sporter is modeled after the

---

[9] *Id.* at p. 8.

MPC scope design which was not purchased by plaintiff, and that defendant did not sell the "Leatherwood" name to plaintiff.

The court, in considering the parties' cross motions for summary judgment, framed the issue before it as follows:

> Whether the Asset Purchase Agreement conveyed the Leatherwood trademark to plaintiff.  If plaintiff purchased the trademark from defendant, defendant was in breach of the Agreement when he began using the Leatherwood trademark in connection with the sale of the Sporter scope in 1998.  Neither party disputes the fact that, at least initially, plaintiff was authorized to use the Leatherwood name and mark.  In addition, the parties stipulate that prior to entering into the Agreement, defendant owned the common law trademark "Leatherwood."[11]

The parties had also agreed that the LEATHERWOOD mark is a famous and valid common law trademark that has been in use in commerce since the late 1960's.[12]

The court, in granting defendant's motion for summary judgment and denying plaintiff's motion for summary judgment, found that Mr. Leatherwood did not intend to sell the LEATHERWOOD name or mark to Leatherwood Scopes International, and that the Asset Purchase Agreement would not be read to include implicitly the conveyance of defendant's mark.  In addition, the court stated that plaintiff "does not own the

---

[10] Plaintiff's complaint in the civil action also included claims of trademark infringement, unfair competition, deceptive trade practices, and cyber-squatting.
[11] *Id.* at p. 5.
[12] *Id.* at p. 3.

LEATHERWOOD mark." Consequently, as a result of its findings, the court concluded that plaintiff's breach of contract claim failed insofar as it was based on defendant's use of the LEATHERWOOD mark; and, because plaintiff was not the owner of the LEATHERWOOD mark, plaintiff's trademark infringement, unfair competition, deceptive trade practices, and cyber-squatting claims also failed. The court further acknowledged that, as a result of its determinations, "…both parties will continue to operate under the name Leatherwood." This is so because defendant did not file a counterclaim seeking to enjoin plaintiff's use of the Leatherwood mark and because plaintiff did not seek a declaration of its rights under the trademark. Consequently, the issue was not squarely before the court.[13] Finally, the court concluded that defendant was not in breach of the Noncompetition Agreement because the Sporter scope is based on the MPC scope, which was not sold to plaintiff.[14]

With the court's determinations in mind, we now turn to the parties' respective pending motions.

**Opposer's motion for leave to file an amended notice of opposition**

---

[13] *Id.* at fn. 2, p. 9.
[14] According to applicant's motion for summary judgment, opposer, on June 5, 2001, withdrew its appeal of the District Court's decision.

6

Opposer, contemporaneously with its response to applicant's motion for summary judgment and its own cross motion for summary judgment, has moved for leave to amend its notice of opposition to include, in addition to its likelihood of confusion allegations, claims that applicant acquiesced to opposer's use of the LEATHERWOOD mark thus precluding applicant from acquiring exclusive rights therein; that opposer relied on this acquiescence, which constitutes laches that precludes applicant from acquiring exclusive rights in the mark; and that opposer's uncontrolled use of the mark after the 1995 agreement amounted to a naked license, causing applicant to have abandoned its rights in the mark.

Applicant has objected to opposer's motion (filed October 2, 2001) for leave to amend its notice of opposition, arguing that the motion was filed after the close of discovery (September 9, 2001 as set in the Board's February 21, 2001 institution order); that opposer is introducing issues that were not part of the original notice and that have been known to opposer for some time; and that opposer has not responded to applicant's discovery requests dated July 1, 2001.

Fed. R. Civ. P. 15(a) provides, in relevant part, that, once a responsive pleading is filed, a party may amend its pleading only by leave of the court or with the written consent of the adverse party.  The Board liberally grants

leave to amend pleadings at any stage of a proceeding when justice so requires, unless entry of the proposed amendment would violate settled law or be prejudicial to the rights of the adverse party or parties.  See Fed. R. Civ. P. 15(a); and TBMP Section 507.02.

Turning briefly to the arguments set forth by applicant in his response, the Board notes that, contrary to applicant's position, any prejudice that may have existed by the possible closing of discovery may be avoided by a resetting of the discovery period.  See, for example, *Space Base Inc. v. Stadis Corp.,* 17 USPQ2d 1216 (TTAB 1990).  Any delay on opposer's part in filing its motion is excusable in view of the pendency of the civil litigation between the parties; and any non-responsiveness on opposer's part to applicant's discovery requests is not persuasive in determining whether the proposed amended notice of opposition should be allowed.

However, we deny opposer's motion to amend the notice of opposition, because the new claims opposer seeks to add by way of the proposed amended notice of opposition are legally insufficient, and allowing the proposed amendment therefore would be futile.  See TBMP Section 507.02 and cases cited therein.

The new substantive claims opposer seeks to add are set forth in Paragraph nos. 19-21 of the proposed amended notice of opposition, as follows:

19) The actions of James Leatherwood indicate that he acquiesced to the use of the trademark and/or trade name LEATHERWOOD by Leatherwood scopes, which precludes James Leatherwood from acquiring exclusive rights in the mark LEATHERWOOD for riflescopes.

20) Leatherwood Scopes relied on this acquiescence of James Leatherwood in not only entering into the Asset Purchase Agreement but also in expanding its business under the trademark and/or trade name LEATHERWOOD, which constitutes laches that precludes James Leatherwood from acquiring exclusive rights in the mark LEATHERWOOD for riflescopes.

21) The uncontrolled use of the trademark and/or trade name LEATHERWOOD by Leatherwood Scopes amounts to a naked license, which causes James Leatherwood to abandon whatever rights it previously had relating to the mark LEATHERWOOD.

Proposed Paragraph nos. 19 and 20 fail to state a claim for relief. Initially, to the extent that opposer is attempting to allege laches and acquiescence, per se, as grounds for opposition, the proposed amended pleading is legally insufficient because laches and acquiescence are affirmative defenses, not grounds for opposition to registration of a mark. *See University Book Store v. University of Wisconsin Board of Regents*, 33 USPQ2d 1385, 1401 n. 39 (TTAB 1994).

However, it appears from the proposed amended pleading that opposer is alleging laches and acquiescence as part of a

claim that applicant has abandoned the mark. That is, opposer's theory appears to be that, because opposer is entitled to assert laches and acquiescence as defenses to any attempt by applicant to preclude opposer from using the LEATHERWOOD mark, opposer therefore is entitled to continue to use the mark. As a result, opposer contends, applicant is not entitled to claim exclusive rights in the mark, has therefore abandoned the mark, and therefore is not entitled to registration of the mark.

We find that Paragraph nos. 19 and 20 are a legally insufficient pleading of abandonment because they fail to include any allegation that the mark has lost all capacity as a source-indicator for applicant's goods. Opposer's theory essentially is identical to the theory which the Board, relying on *Wallpaper Manufacturers, Ltd. v. Crown Wallcovering Corp.*, 680 F.2d 755, 214 USPQ 327, 335 (CCPA 1982), rejected in *Woodstock's Enterprises Inc. (California) v. Woodstock's Enterprises Inc*. (Oregon), 43 USPQ2d 1440, 1446 (TTAB 1997):

> We begin our analysis with the premise that
> maintenance of exclusivity of rights in a mark is
> not required in order to avoid a finding of
> abandonment ... Instead, so long as at least some
> purchasers identify respondent with the registered
> mark, it cannot be said that respondent's course
> of conduct has caused the registered mark to lose
> its significance as a mark ... As in *Crown*, it is
> necessary to remember the following:

> [There is a] distinction between conduct of a
> trademark owner which results in a loss of
> right to enjoin a particular use because of an
> affirmative *defense* available to that user and
> conduct which results in a loss of *all* rights
> of protection as a mark against use by anyone.
> Only when all rights of protection are
> extinguished is there abandonment.
>
> [*Crown*, 214 USPQ at 335.] ...
>
> Thus, under *Crown*, whether petitioner in this case
> has a right to continue to use the registered mark
> is not determinative of the question of
> abandonment; rather, the focus must be on what
> rights, if any, respondent has in the registered
> mark ... Moreover, as emphasized by the court in
> Crown, "a mark becomes abandoned only when the
> mark loses its significance as indication of
> origin, not the sole identification of source."
> ... In other words, regardless of whether
> petitioner has the right to use the WOODSTOCK'S
> mark, the fact that the registered WOODSTOCK'S
> PIZZA PARLOR and design mark identifies respondent
> as one of two sources of the restaurant services
> negates any inference of abandonment.

*Woodstock's Enterprises, supra,* 43 USPQ2d at 1446.

Thus, because opposer's proposed amended pleading in the present case does not include any allegation that applicant's mark has lost *all* capacity to act as a source-indicator for applicant's goods, the proposed amended pleading fails to state a claim for relief. Opposer's allegations (in Paragraph nos. 19 and 20) that applicant's laches and acquiescence preclude applicant from challenging opposer's continued right to use the mark and that applicant accordingly does not have

*exclusive* rights in the mark, even if accepted as true, are legally insufficient.[15]

In Paragraph no. 21 of the proposed amended pleading, opposer alleges that applicant has abandoned the mark due to its naked licensing thereof, in view of opposer's uncontrolled use of the mark since 1995. We find that this allegation fails to state a claim for relief. Even accepting opposer's allegations of naked licensing as true, we find that they fail to state a claim for relief in this case because opposer, as the alleged licensee, is estopped to challenge applicant's ownership of the mark, under the doctrine of licensee estoppel. *See, e.g., Estate of Biro v. Bic Corp.*, 18 USPQ2d 1382 (TTAB 1991). Because, as a matter of law, opposer cannot prevail on this proposed abandonment claim, it would be futile to allow opposer to amend the notice of opposition to assert such claim.

For the reasons discussed above, opposer's Rule 15(a) motion for leave to amend the notice of opposition is denied. The original notice of opposition remains the operative pleading in this case.

---

[15] For the same reason, we reject as insufficient and irrelevant opposer's argument, in its summary judgment brief, that applicant cannot challenge opposer's right to use the LEATHERWOOD mark now because such a challenge was a compulsory counterclaim in the parties' civil action.

**The summary judgment motions**

In a motion for summary judgment, the moving party has the burden of establishing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. The fact that both parties have moved for summary judgment does not necessarily mean that no genuine issues of material fact remain. See *University Book Store v. University of Wisconsin Board of Regents,* 33 USPQ2d 1471 (Fed. Cir. 1992); and Wright, Miller & Kane, Vol. 10A Civil Practice and Procedure: Civil 2d Section 2720 (2d ed. 1983).

A genuine dispute with respect to a material fact exists if sufficient evidence is presented that a reasonable fact finder could decide the question in favor of the non-moving party. See *Opryland USA Inc. v. Great American Music Show, Inc.,* 970 F.2d 847, 23 USPQ2d 1471 (Fed. Cir. 1992). Thus, all doubts as to whether any particular factual issues are genuinely in dispute must be resolved in the light most favorable to the non-moving party. See *Olde Tyme Foods Inc. v. Roundy's Inc.,* 961 F.2d 200, 22 USPQ 1542 (Fed. Cir. 1992).

*Opposer's motion for summary judgment*

Opposer has moved for summary judgment in its favor on the claims it attempted to add by way of its amended pleading. In view of our finding, *supra*, that these new claims are legally insufficient, and our resulting denial of opposer's motion for leave to amend its notice of opposition to add the new claims, we deny opposer's motion for summary judgment as well. As discussed above, opposer cannot establish that it is entitled to judgment as a matter of law on these claims. See Fed. R. Civ. P. 56(c); see, also, TBMP Section 528.07.

***Applicant's motion for summary judgment***

Applicant has moved for summary judgment in his favor as to opposer's originally-pleaded Section 2(d) claim, on the ground that applicant, and not opposer, has priority, and that opposer therefore cannot prevail under Section 2(d).

There is no genuine issue of material fact that applicant has been using the mark continuously since the 1960's in connection with rifle scopes and/or scope mounts, and that opposer did not commence use of the mark until 1995. Of necessity, therefore, opposer's priority claim apparently is based on its contention that applicant abandoned his rights in the mark in 1995 or thereafter due to applicant's naked licensing of the mark to opposer, and due to applicant's laches and acquiescence with respect to opposer's use of the

14

mark (and applicant's failure to assert a compulsory counterclaim in the parties' civil action), which preclude applicant from claiming exclusive rights in the mark.

However, the record is devoid of any evidence which raises a genuine issue of material fact as to whether applicant has abandoned the mark, and thus as to whether opposer is entitled to claim priority under Section 2(d). We accordingly find that opposer cannot prevail on the priority question, and that its Section 2(d) claim therefore must fail.

As discussed above in connection with opposer's Rule 15(a) motion to amend its pleading to add these abandonment claims, the mere fact that opposer might be entitled to use the mark, or that applicant therefore cannot claim the exclusive right to use the mark, is legally insufficient to establish that applicant has abandoned the mark. Opposer has not presented any evidence from which a reasonable factfinder might conclude that applicant's mark has lost *all* capacity to act as a source-indicator for applicant's goods; absent such a finding, no abandonment exists. Moreover, for the reasons discussed above, opposer is legally estopped to challenge applicant's ownership of the mark on the basis of applicant's alleged abandonment of the mark due to his granting of a "naked license" to opposer.

In summary, we find as a matter of law that because there has been no abandonment by applicant, that applicant, and not opposer, has priority for purposes of Section 2(d). Because no genuine issues of material fact exist and applicant is entitled to judgment as a matter of law, regarding priority, applicant's motion for summary judgment as to opposer's Section 2(d) claim is granted.

Additionally, although applicant has not moved for summary judgment as to opposer's originally-pleaded dilution claim, we find as a matter of law that opposer cannot prevail on that claim. Opposer appears to have recognized as much, in view of its deletion of the dilution claim from its proposed amended pleading. Opposer is not the owner of the mark, and applicant's use and/or registration of the mark will not result in dilution. We therefore grant summary judgment to applicant on opposer's dilution claim.

Having rejected opposer's proposed amended claims as legally insufficient, and having granted summary judgment to applicant as to opposer's originally-pleaded claims, the opposition is hereby dismissed with prejudice.